Carol LEVEE, Appellant–Plaintiff,

v.

Richard BEECHING and National Education Association, South Bend, an Affiliate of the Indiana State Teachers Association, Appellees–Defendants.

No. 71A04–9906–CV–248.

Court of Appeals of Indiana.

May 31, 2000.

Sean E. Kenyon, Margot F. Reagan, Konopa & Murphy, South Bend, Indiana, Attorneys for Appellant.

Richard J. Darko, Eric M. Hylton, Lowe Gray Steele & Darko, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Carol Levee ("Levee") appeals from partial summary judgment on the issue of defamation *per se,* partial summary judg-

ment on the issue of tortious interference with a business relationship [1], and judgment on the evidence in favor of Richard Beeching ("Beeching") and the National Education Association–South Bend ("NEA").

We affirm in part and reverse and remand in part.

### ISSUES

Levee raises three issues for our review, which we consolidate and restate as:

1. Whether the trial court erred in granting partial summary judgment in favor of Beeching and the NEA on the issues of defamation *per se,* tortious interference with a contractual relationship, and tortious interference with a business relationship.

2. Whether the trial court erred in entering judgment on the evidence in favor of Beeching and the NEA on the issue of defamation *per quod.*

### FACTS AND PROCEDURAL HISTORY

Levee has been the principal of Eggleston School in South Bend since the Fall of 1994. Beeching is the UNISERV [2] Director for the NEA–South Bend, and he is married to Elaine Beeching ("Elaine"), a teacher at Eggleston. During the Spring and Fall of 1995, Levee took some actions which upset Elaine. During the Fall of 1995, Kelly Reygaert, another teacher at Eggleston, heard Elaine discussing Levee and concluded that Elaine wanted to force Levee to leave Eggleston.

---

1. Count III of Levee's complaint is entitled "Interference With a Contractual Relationship," but paragraph 17 of that Count refers to Beeching's interference with Levee's "business" relationships with South Bend Community School Corporation and Eggleston teachers. Levee makes two separate claims, one that Beeching interfered with her contractual relationship with her employer and the other that Beeching interfered with her "business" relationships with Eggleston teachers. The first action is a claim for tortious interference with a contractual relationship, while the sec-

ond is a claim for tortious interference with a business relationship. Neither Levee nor the trial court distinguished the torts but characterized both claims as tortious interference with a *business* relationship.

2. UNISERV is "a delivery system used by ISTA [Indiana State Teachers Association] and NEA to provide services to local teachers." *DeBaets v. National Educ. Ass'n–South Bend,* 657 N.E.2d 1236, 1239 n. 4 (Ind.Ct. App.1995), *trans. denied.*

Between August, 1995 and November, 1995, Elaine filed six grievances against Levee and conferred with other teachers who filed two grievances. Beeching, as the UNISERV Director, acted upon those grievances. On October 19, 1995, Beeching placed a document in each Eggleston School teacher's box stating that Levee "couldn't be trusted." Record at 156. These events led Bruce Stahly, Executive Director of Support Services for the South Bend Community School Corporation ("SBCSC"), Jan Putz, Executive Director of Instruction and Curriculum for the SBCSC, and Myrtle Wilson, Director of Elementary Secondary Education for the SBCSC to write a joint letter to the Executive Committee of the NEA–South Bend expressing concern that Beeching was apparently using his office "to conduct what appears to be a personally motivated attack" against Levee. Record at 870.

On January 23, 1996, Beeching met with Eggleston School teachers regarding the cancellation of an Internet training session that Levee had scheduled. During that meeting, Beeching called Levee a "liar" and stated that Levee "favored some staff." Record at 156. Thereafter, on March 6, 1996, Stahly, Putz and Wilson wrote a letter to the President of the Indiana State Teachers Association complaining about Beeching's continued personal attacks on Levee.

At the conclusion of the 1995–96 school year, Levee received a 1.5% merit increase. She had received a 3% merit increase at the close of each of the previous three school years. Levee's supervisor, Myrtle Wilson, told her that the decrease in her merit pay was due to the turmoil at Eggleston during the 1995–96 school year.

On March 20, 1996, Levee filed a complaint against Beeching and the NEA. She sought damages for defamation, tortious interference with a contractual rela-

tionship, and intentional infliction of emotional distress. On November 3, 1997, Beeching and the NEA moved for partial summary judgment on the issues of defamation and intentional infliction of emotional distress. The trial court granted partial summary judgment in favor of Beeching and the NEA on the issues of defamation *per se* and intentional infliction of emotional distress but ruled that the issue of whether Levee could recover on a theory of defamation *per quod* should go to a jury.

On November 3, 1998, Beeching and the NEA moved for partial summary judgment on the issue of tortious interference with a business or contractual relationship.[3] Following oral argument, the trial court entered partial summary judgment in favor of Beeching and the NEA. Levee was allowed to proceed to trial on the issue of defamation *per quod.* Following Levee's presentation of evidence on her claim, Beeching and the NEA moved for judgment on the evidence. After hearing arguments on the motion, the trial court entered judgment on the evidence in favor of Beeching and the NEA.

## DISCUSSION AND DECISION

### I. Summary Judgment

In reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any question of fact or an inference to be drawn therefrom in favor of the non-moving party. *Foster v. Evergreen Healthcare, Inc.,* 716 N.E.2d 19, 23–24 (Ind.Ct.App.1999), *trans. denied.* Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C).

---

**3.** In their motion for summary judgment, Beeching and the NEA addressed the issues of both tortious interference with a business relationship and tortious interference with a contractual relationship because, as we have noted in footnote one, Count III of Levee's complaint was ambiguous as to which tort she claimed.

Once the moving party has met this burden with a prima facie showing, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material fact for trial. *Jacques v. Allied Bldg. Servs. of Indiana*, 717 N.E.2d 606, 608 (Ind.Ct.App.1999). Any doubt about the existence of a factual issue should be resolved against the movant, with all properly asserted facts and reasonable inferences construed in favor of the nonmovant. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind.1994). The party appealing the grant of a motion for summary judgment bears the burden of persuading this court that the trial court erred. *Foster*, 716 N.E.2d at 24.

### A. Defamation *Per Se*

▇▇▇ Levee contends that the trial court erred when it entered partial summary judgment on the issue of defamation *per se*. A communication is defamatory *per se* if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation, or; (4) sexual misconduct. *Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind.Ct.App. 1992), *trans. denied*. In addition, the defamatory nature of the communication must appear without resort to extrinsic facts or circumstances. *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 65 (Ind.Ct.App.1999), *trans. denied*. The determination of whether a communication is defamatory is a question of law. *Id.*

▇▇▇ Levee contends that Beeching's remarks calling her a "liar" and stating that she "favored some staff" were defamatory *per se*. Specifically, Levee maintains that these comments imputed professional misconduct on her part and indicated that she had deliberately lied in the course of her duties as principal. Beeching and the NEA respond that the comments were not defamatory *per se* because they were merely obnoxious remarks and because reference to extrinsic facts was necessary to convey a defamatory meaning.

While we conclude that Beeching's comments had a defamatory imputation, we agree with the trial court that they were not defamatory *per se*. As a matter of law, his words were not "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Moore v. University of Notre Dame*, 968 F.Supp. 1330, 1334 (N.D.Ind.1997). Beeching's remarks that Levee was a "liar" and that she "favored some staff" acquired a defamatory meaning only with reference to Beeching's pattern of personal attacks against Levee. *McQueen*, 711 N.E.2d at 65. They are not, therefore, actionable *per se*. *Id.* The trial court correctly entered partial summary judgment in favor of Beeching and the NEA on this issue.

### B. Tortious Interference With a Contractual Relationship

▇▇▇ Levee contends that the trial court erred in granting partial summary judgment in favor of Beeching and the NEA on the issue of their alleged tortious interference with the *business* relationships she had with her employer and Eggleston teachers. Beeching and the NEA correctly recognize that Levee's claim for interference with her relationship with her employer, SBCSC, is one for intentional interference with a *contractual* relationship. We have consistently held that an action for intentional interference with a business relationship arises where there is no contract underlying the relationship involved in the litigation. *See Comfax Corp. v. North Am. Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind.Ct.App.1992); *Biggs v. Marsh*, 446 N.E.2d 977, 983 (Ind.Ct. App.1983); *Helvey v. O'Neill*, 153 Ind. App. 635, 647, 288 N.E.2d 553, 560–561 (1972).

Here, while the trial court did not distinguish between the two claims, its order of January 19, 1999 granted partial summary judgment in favor of Beeching and the NEA "on Count III" of Levee's complaint. Because Count III included both Levee's claim for tortious interference with a business relationship and her claim for tortious

interference with a contractual relationship, the trial court's order disposed of both claims. We conclude that Levee's claim for tortious interference with a contract should have gone to the jury.

■ The elements of an action for tortious interference with a contract are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. *Biggs,* 446 N.E.2d at 983. Beeching and the NEA contend that they have demonstrated that the undisputed material facts prove that Beeching's conduct was justified and that he did not induce Levee's employer to breach its contract with her, thus negating two elements of Levee's action.[4]

■ In summary judgment proceedings, the burden is on the moving party to prove the non-existence of a genuine issue of material fact. *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1235 (Ind. 1994). Movants may meet this burden by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim. *Id.* The evidence and reasonable inferences to be drawn therefrom establish questions of fact as to whether Beeching's conduct was unjustified and whether he intentionally induced SBCSC to breach its contract with Levee.[5]

■ In determining whether a defendant's conduct in intentionally interfering with a contract is justified, the following factors are considered:

(a) the nature of the defendant's conduct;

(b) the defendant's motive;

(c) the interests of the plaintiff with which the defendant's conduct interferes;

(d) the interests sought to be advanced by the defendant;

(e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;

(f) the proximity or remoteness of the defendant's conduct to the interference; and

(g) the relations between the parties.

*Winkler,* 638 N.E.2d at 1235 (quoting RESTATEMENT (SECOND) OF TORTS § 767 (1977)). The weight to be given each consideration may differ from case to case, but the overriding question is whether the defendant's conduct has been fair and reasonable under the circumstances. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 767, cmt. j). In light of the evidence supporting our determination that Beeching's remarks had a defamatory imputation, we cannot say as a matter of law that Beeching's conduct was justified.

■ Beeching and the NEA do not cite any authority to support their contention that there are no genuine issues of material fact on the inducement of breach issue. Apparently Beeching and the NEA

---

4. We cannot agree with the dissent's contention that Levee has waived this issue on appeal. Indiana Appellate Rule 8.3(A)(7) requires the appellant to support each contention with an argument, including citations to the authorities, statutes, and record for support. *Burnett v. Cincinnati Ins. Co.,* 690 N.E.2d 747, 749 (Ind.Ct.App.1998), *trans. denied.* Failure of a party to present a cogent argument in his or her brief can result in waiver of that issue. *Id.* While Levee did not characterize her claim as one for tortious interference with a contract, her argument in support of her claim for tortious interference with a business relationship effectively substantiates *both* claims. Because both torts include the same core elements and both claims involve the same facts, Levee's argument preserves both claims on appeal. *See* App.R. 8.3(A)(7) ("If substantially the same question is raised by two or more errors alleged, they may be grouped and supported by one argument.").

5. Because these are the only two elements that Beeching and the NEA challenge on summary judgment, we need not address whether there is evidence to negate any of the other elements.

believe that "breach" of an employment contract means only termination of employment. The law does not require such a narrow interpretation. A party breaches a contract when he fails to perform all the obligations which he has agreed to undertake. *Worrell v. WLT Corp.*, 653 N.E.2d 1054, 1057 (Ind.Ct.App.1995), *trans. denied.* An employment contract can be breached short of terminating the employer-employee relationship.

The record indicates that whether Levee received a 1.5% or 3% merit increase was discretionary and was not a contract right. She did, however, have a contract right to be considered for a merit increase without having that consideration impaired by the tortious interference of a third party. The evidence in this case is sufficient to send the issue of tortious interference with a contractual relationship to a jury.

We have not previously considered what constitutes breach of an employment contract in the context of tortious interference with a contractual relationship. The Restatement (Second) of Torts §§ 766 and 766A, both addressing intentional interference with contracts, provides guidance in considering this important question. Both sections have been cited with approval by our courts. *See Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 284–85 (Ind.1991) (§ 766); *Bradley v. Hall*, 720 N.E.2d 747, 751 (Ind.Ct.App. 1999) (§ 766A).

■■■ Comment b to § 766 provides that "there is a general duty not to interfere intentionally with another's reasonable business *expectancies* of trade with third persons." (Emphasis added). Comment a to § 766A indicates that liability will attach where one intentionally interferes with a plaintiff's performance of his own contract, "either by preventing that performance or making it more expensive *or burdensome.*" (Emphasis added). Thus, where a third party's conduct substantially and materially impairs the execution of an employment contract, frustrating an employee's expectations under her contract and making

performance of her contractual duties more burdensome, the inducement of breach element of a claim for tortious interference with a contractual relationship is satisfied.

Levee had a right to be considered for a merit increase unfettered by Beeching's interference. Beeching and the NEA have failed to satisfy their burden of proof on summary judgment. We reverse the trial court's grant of summary judgment on the issue of tortious interference with Levee's contractual relationship with the SBCSC.

### C. Tortious Interference With a Business Relationship

■■■ Levee contends that the trial court erred in granting partial summary judgment in favor of Beeching and NEA on the issue of defendants' alleged tortious interference with her business relationships with Eggleston teachers. The elements of that tort are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship. *Bradley*, 720 N.E.2d at 750. The trial court determined that illegal conduct is also required and granted partial summary judgment on the basis that Levee failed to establish that element. Levee argues that the trial court erred in requiring a showing of illegal conduct, or, in the alternative, that the trial court erred in finding that defamation does not satisfy the illegality element.

■■■ We agree with the trial court that illegal conduct is an essential element of tortious interference with a business relationship. *See id.* at 751; *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 876 (Ind.Ct.App.1998), *trans. denied; Biggs*, 446 N.E.2d at 983. And we agree that defamation does not satisfy that element. Despite the lack of a definition or test for a showing of the "illegal conduct" element

of tortious interference with a business relationship, case law does not support a finding that defamation constitutes illegal conduct. Beeching and the NEA were entitled to partial summary judgment on Levee's claim for tortious interference with a business relationship.

## II. Judgment on the Evidence

 Levee contends that the trial court abused its discretion when it entered judgment on the evidence on the issue of defamation *per quod*. The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence. *Smock Materials Handling Co. v. Kerr*, 719 N.E.2d 396, 401 (Ind.Ct.App.1999). The grant or denial of a motion for judgment on the evidence is within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. *Id.* Indiana Trial Rule 50 reads in pertinent part:

Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

 Upon review of a trial court's ruling on a motion for judgment on the evidence, we apply the same standard as the trial court, considering only the evidence and reasonable inferences most favorable to the nonmoving party. *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind.Ct.App.1999), *trans. denied.* Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *Kerr*, 719

N.E.2d at 401. A judgment on the evidence is proper only when there is a total absence of evidence in favor of the plaintiff, that is, when the evidence is without conflict and is susceptible of only one inference and that inference is in favor of the defendant. *Id.* Likewise, judgment on the evidence is proper if the inference intended to be proven by the evidence cannot logically be drawn from the proffered evidence without undue speculation. *Id.*

 Here, Levee's defamation *per quod* claim was the only claim to survive Beeching and the NEA's motions for partial summary judgment. The elements of a defamation action are: (1) defamatory imputation; (2) malice; (3) publication; and (4) damages. *Schrader*, 639 N.E.2d at 261. An action for defamation *per quod* is actionable only if it causes the plaintiff special damages. *Rambo*, 587 N.E.2d at 146. Special damages are not assumed to be necessary or inevitable but must be shown by allegation and specific proof to have been actually incurred as a natural and proximate consequence of the wrongful act. *Stanley v. Kelley*, 422 N.E.2d 663, 668–69 (Ind.Ct.App.1981), *rejected in part on other grounds by Bochnowski*, 571 N.E.2d at 284. Following Levee's presentation of evidence, Beeching and the NEA moved for judgment on the evidence on the basis that Levee had failed to establish the elements of defamatory imputation and proximate cause, and they asserted the defense of qualified privilege. The trial court entered judgment on the evidence on the element of proximate cause.[6]

 Levee contends that the trial court abused its discretion in entering judgment on the evidence since Wilson's testimony supports a reasonable inference that Beeching's comments proximately

6. The record makes it clear that this was the only basis for the trial court's entry of judgment on the evidence in favor of Beeching and the NEA. We do not address, therefore, the issues of defamatory imputation and qualified privilege. We note, however, that Levee presented evidence sufficient to satisfy the element of defamatory imputation, and Beeching and the NEA's claim of qualified privilege is overcome by evidence of Beeching's bad faith in making the statements at issue.

caused Levee's damages. Beeching and the NEA maintain that judgment on the evidence was appropriate because the undisputed facts establish that Levee's diminished merit raise was not the direct and proximate result of Beeching's comments. In support of their motion for judgment on the evidence, Beeching and the NEA relied upon the testimony of Myrtle Wilson that she considered a number of issues in addition to Beeching's statements to Eggleston teachers in deciding upon Levee's merit raise. They argued that because Wilson could not state that Levee would have received a full merit raise "but for" Beeching's statements, those statements were not the proximate cause of Levee's injuries as a matter of law. The trial court agreed and granted the motion on that basis.

We agree with Levee that the trial court erroneously entered judgment on the evidence in favor of Beeching and the NEA. The record is replete with evidence that Beeching's comments were a factor in Wilson's decision to reduce Levee's raise. Therefore, a question of material fact exists on the issue of proximate cause.

■ Beeching and the NEA's argument that Wilson's testimony precludes a finding of proximate cause as a matter of law mischaracterizes the so-called "but for" test. Beeching and the NEA rely on one sentence from our opinion in *City of East Chicago v. Litera*, 692 N.E.2d 898 (Ind.Ct.App.1998), *trans. denied*, in support of their contention, but they fail to consider the rule of the underlying decision, *Smith v. Beaty*, 639 N.E.2d 1029 (Ind.Ct.App.1994). As our holding in *Smith* makes clear, a defendant's act need not be the sole cause of the plaintiff's injuries, and many causes may produce the injurious result. *Id.* at 1034. The essential question in determining proximate cause is not whether the defendant's act is the only cause, but whether the act is one of the proximate causes as opposed to a remote cause.[7] *Id.*

The trial court adopted Beeching and the NEA's interpretation of the "but for" test of proximate cause. In arriving at its decision to grant the motion for judgment on the evidence, the court commented, "I don't know that we can say but for the comments she would have gotten an outstanding recommendation." Record at 854. Levee's counsel correctly responded that it was for a jury to decide proximate cause. Record at 854–56. In declining to send the issue to the jury, the trial court focused on the fact that Wilson could not say "but for" Beeching's comments Levee would have received a full merit increase.

To the contrary, when considered in a light most favorable to Levee, that portion of Wilson's testimony referenced by the trial court clearly supports an inference that Beeching's comments proximately caused the reduced merit raise. Wilson testified that the comments "were part of a number of other things" that led to a reduction in Levee's merit raise. Record at 696. A jury might reasonably infer that the comments were a cause in fact of Levee's damages, which satisfies the but for test of proximate cause as enunciated in *Smith*, 639 N.E.2d at 1033. Levee is entitled to a new trial on her claim for defamation *per quod*.

### III. Conclusion

We affirm the trial court's entry of partial summary judgment on the issues of defamation *per se* and tortious interference with a business relationship. We reverse the trial court's entry of partial summary judgment on the issue of tortious interference with a contractual relationship. We reverse the trial court's entry of judgment on the evidence on Levee's claim of defamation *per quod* and remand for further proceedings consistent with this opinion.

---

7. The dissent's adoption of causation standards used in the context of federal employment discrimination cases is inapposite here since Levee's employer is not a party to the alleged defamation. There is no basis for applying either a mixed-motive analysis or pretext standard on these facts.

Affirmed in part and reversed and re-manded in part.

BROOK, J., concurs.

ROBB, J., concurs in part and dissents in part with separate opinion.

ROBB, Judge, concurring in part and dissenting in part

I agree with the majority that the trial court properly granted partial summary judgment in favor of the NEA and Beeching with regard to Levee's claims of defamation per se and tortious interference with a business relationship. However, I respectfully dissent from the majority's conclusion that the trial court erred in granting partial summary judgment in favor of the NEA and Beeching with regard to the claim of tortious interference with a contractual relationship. I also disagree with the majority that the trial court erred in granting judgment on the evidence in favor of the NEA and Beeching with regard to Levee's claim of defamation per quod.

### I. Tortious Interference Claims

First, I believe that this court is precluded from addressing the issue of tortious interference with a contractual relationship. Count III of Levee's complaint, entitled "Interference with a Contractual Relationship," provides in pertinent part that "Beeching, by his tortious conduct interfered with the business relationship which existed between Levee and her employer, SBCSC, as well as her relationship with the persons who reported her in her position as principal of Eggleston Elementary School." R. 14. The majority opinion states that "Levee makes two separate claims, one that Beeching interfered with her contractual relationship with her employer and the other that Beeching interfered with her 'business' relationships with Eggleston teachers." Op. at 218 n.1.

Indiana Trial Rule 8(F) provides that "[a]ll pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation on the merits." Looking to the language of the complaint, I agree with the majority that the claims of tortious interference with a contractual relationship and tortious interference with a business relationship can be gleaned from Levee's pleadings. The elements of tortious interference with a contractual relationship are: 1) the existence of a valid and enforceable contract; 2) defendant's knowledge of the contract's existence; 3) defendant's intentional inducement of the breach of the contract; 4) the absence of justification; and 5) damages resulting therefrom. *Fields v. Cummins Employees Fed. Credit Union,* 540 N.E.2d 631, 640–41 (Ind.Ct.App.1989). The elements of a cause of action for tortious interference with a business relationship are the same as the elements for interference with a contract except that there is no requirement that a valid contract exist. *Biggs v. Marsh,* 446 N.E.2d 977, 983 (Ind. Ct.App.1983). However, an additional element is that the defendant acted illegally by his interference. *Id.; See also Watson Rural Water Co. v. Indiana Cities Water Corp.,* 540 N.E.2d 131, 139 (Ind.Ct.App. 1989), *trans. denied.* Essentially, the majority concluded that Levee's complaint alleges both that the NEA and Beeching interfered with her contractual relationship of employment with SBCSC and her business relationship with the teachers who were under her direct supervision as principal of Eggleston school.

The NEA and Beeching in their Brief in Support of Motion For Summary Judgment specifically argue that they are entitled to partial summary judgment with regard to the torts of tortious interference with a contractual and business relationship. Thus, both Levee and the trial court were provided adequate notice of the basis of the NEA and Beeching's motion for summary judgment. After reviewing the record, it appears that Levee did not argue the claim of tortious interference with a contractual relationship on summary judg-

ment.[8] The trial court's January 14, 1999 order only refers to the tort of tortious interference with a business relationship, failing to dispose of the claim of tortious interference with a contractual relationship.[9] R. 275–282. Thus, the claim of tortious interference with a contractual relationship was still viable after partial summary judgment.

However, Levee failed to present any evidence at trial in support of the claim of tortious interference with a contractual relationship. During Levee's case-in-chief, the only evidence introduced and argument presented at trial concerned her claim of defamation per quod by the NEA and Beeching. At the close of Levee's case-in-chief, the NEA and Beeching moved for judgment on the evidence with regard to the claim of defamation per quod. The trial court later granted the motion in favor of the NEA and Beeching, discharging the jury. R. 346. Thus,

Levee waived the claim of tortious interference with a contractual relationship at trial.[10] Because Levee waived the tort of tortious interference with a contract at trial and failed to raise the issue on appeal, I believe that this court is precluded from addressing the merits of this tort claim on appeal.

## II. Defamation Per Quod

Furthermore, I disagree with the majority's conclusion that:

> the trial court erroneously entered judgment on the evidence in favor of Beeching and the NEA. The record is replete with evidence that Beeching's comments were a factor in Wilson's decision to reduce Levee's raise. Therefore, a question of material fact exists on the issue of proximate cause.

Op. at 224. In reaching its conclusion, the majority adopted the test for proximate

---

**8.** I note that the NEA and Beeching moved for partial summary judgment on two different occasions. The NEA and Beeching first moved for partial summary judgment on Levee's claims of defamation per se and intentional infliction of emotional distress, a motion which the trial court later granted. R. 17–18, 155–59. Thereafter, the NEA and Beeching moved for partial summary judgment on the issue(s) contained in Count III of Levee's complaint. R. 160–68.

The moving parties were unclear which tort Levee was alleging in Count III: tortious interference with a contractual relationship or tortious interference with a business relationship, or both. See R. 163. The NEA and Beeching's Brief In Support Of Motion For Summary Judgment provides in pertinent part that "[i]t is unclear which tort Levee is alleging in Count III of her Complaint." R. 163. Consequently, the NEA and Beeching argued the merits of tortious interference with a contractual relationship and tortious interference with a business relationship in their Brief In Support Of Motion For Summary Judgment. R. 163–67. Levee, however, neither delineates nor argues the distinction between the two torts in either her complaint or Brief in Opposition to Defendant's Motion for Summary Judgment. See R. 11–15, 137–54. Moreover, Levee only argues the merits of the tort of tortious interference with a business relationship in her Supplemental Brief And Re-

sponse To Defendant's Motion For Summary Judgment. R. 187–94. I believe that the tort of tortious interference with a contractual relationship was not contemplated by Levee during the pleading stage, and that she inadvertently gained the tort claim by the way in which her complaint was drafted. However, because of the liberal rules of notice pleading in Indiana, I have given Levee the benefit of the doubt that she intended to plead and argue the merits of both tort claims at trial. See T.R. 8(F).

**9.** I note that Levee failed to raise the issue on appeal that the trial court's January 14, 1999 order granted summary judgment in favor of the NEA and Beeching with regard to the claim of tortious interference with a contractual relationship, and that this action by the court constituted error. Issues not argued by an appellant in the appellate brief are waived on appeal. Indiana Appellate Rule 8.3(A)(7). Thus, we are precluded from addressing this issue on appeal.

**10.** I note that Levee filed a Motion to Reconvene and Reconsider, which was later denied by the trial court. R. 345. In Levee's Supplemental Memorandum In Support Of Its Motion to Reconvene And Reconsider, she only argues the merits of her claim of defamation per quod; nothing is mentioned in her brief regarding the tort of tortious interference with a contractual relationship.

cause articulated in *Smith v. Beaty*, 639 N.E.2d 1029 (Ind.Ct.App.1994), which provides that "[t]he essential question in determining proximate cause is not whether the defendant's act is the only cause, but whether the act is one of the proximate causes as opposed to a remote cause." Op. at 224 (citing *Smith*, 639 N.E.2d at 1034).

I acknowledge that the *Smith* test for proximate cause is appropriate for the majority of tort actions in Indiana. However, in the employment context, I believe that this test for proximate cause is inapplicable. This court in *SSU Fed'n of Teachers, Local 4195 v. Board of Dir., Madison Area Educ. Special Serv. Unit*, 656 N.E.2d 832, 835 (Ind.Ct.App.1995), looked to federal law and analyzed the causation standards for employment discrimination cases, ultimately determining that the "pretext" standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), controls rather than the "mixed motive" test of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

The "mixed motive" analysis developed in *Price Waterhouse* requires the plaintiff to prove a prima facie case that the motivating factor was discriminatory. *Price Waterhouse*, 490 U.S. at 246, 109 S.Ct. 1775. The burden then shifts to the defendant to prove that the discriminatory motive had no bearing on the negative employment decision. *Id.* The "pretext" standard utilized in *McDonnell Douglas* and *Burdine* requires the plaintiff to prove by a preponderance of the evidence a prima facie case of discrimination. *See Indiana Civil Rights Comm'n v. City of Muncie*, 459 N.E.2d 411, 418 (Ind.Ct.App. 1984). The burden of going forward then shifts to the defendant to articulate some legitimate nondiscriminatory reason for the employer's decision. *Id.* Then, the plaintiff must ultimately carry the burden to show that the employer's proffered reason was not the true reason for the decision, but rather only a pretext. *Id.* at 419.

In the "mixed motive" case, the plaintiff need only show that the improper consideration played a part in the employer's decision. *Price Waterhouse*, 490 U.S. at 246, 109 S.Ct. 1775. The employer must then show that it was not a factor in the employment decision. *Id.* In contrast, the employee under the *McDonnell Douglas* and *Burdine* standard bears the ultimate burden of proving the improper reason was the true reason. *Indiana Dep't of Correction v. Indiana Civil Rights Comm'n*, 486 N.E.2d 612, 617 (Ind.Ct.App. 1985), *trans. denied.* This court, in *SSU Fed'n of Teachers, Local 4195*, found the proper test to be the pretext standard. *SSU Fed'n of Teachers, Local 4195*, 656 N.E.2d at 835. However, like that case, I believe the plaintiff herein does not succeed using either standard, despite the fact that the "mixed motive" test provides an easier opportunity for the plaintiff to succeed.

In the present case, Myrtle Wilson, the director of instruction for SBCSC, testified at trial that she conducted the 1995–96 performance evaluation of Levee which resulted in Levee receiving a good rating for purposes of merit pay. R. 660. Wilson further testified that if all of the grievances had not been filed against Levee, she probably would have given Levee an outstanding performance rating. R. 691. Moreover, Wilson stated that Beeching comments "contributed to [Levee's] failure to get an outstanding rating" for the 1995–96 school year. R. 693.

After examining Wilson's trial testimony, I agree with the majority that Beeching comments were a factor in Levee receiving only a good performance rating. However, the motivating factor in Wilson's decision not to give Levee a outstanding rating appears to be the number of grievances filed against her by teachers under her direct supervision at Eggleston Elementary School. Using the *Price Water-*

*house* standard for causation, Levee has not proven that Beeching's comments were a "motivating factor" in Wilson's employment decision, and therefore, even under that standard the burden never shifted to the employer. Likewise, Levee certainly never showed that the grievances were a pretext for an improper motive under the *McDonnell Douglas* and *Burdine* standard. I would affirm the trial court's grant of judgment on the evidence in favor of the NEA and Beeching with regard to Levee's claim of defamation per quod.

Based on the foregoing, I agree with the majority's conclusion that the trial court properly granted partial summary judgment in favor of the NEA and Beeching with regard to Levee's claims of defamation per se and tortious interference with a business relationship. However, I disagree with the majority's holding that the trial court erred in granting partial summary judgment in favor of the NEA and Beeching with regard to the claim of tortious interference with a contractual relationship. I also disagree with the majority that the trial court erred in granting judgment on the evidence in favor of the NEA and Beeching with regard to Levee's claim of defamation per quod.