In the

# United States Court of Appeals
### For the Seventh Circuit

No. 02-3441

THE OSLER INSTITUTE, INC.,

*Plaintiff-Appellant*,

*v.*

LOIS FORDE,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. TH01-019-C-M/H—**Larry J. McKinney**, *Chief Judge.*

ARGUED APRIL 10, 2003—DECIDED JUNE 26, 2003

Before BAUER, RIPPLE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* The Osler Institute sued its for-
mer employee, Lois Forde, after she began working for a
rival company. Although neither party filed any disposi-
tive motions, the district court snuffed out Osler's hopes
of recovery before trial when it sua sponte granted judg-
ment in Forde's favor. Osler appeals.

The Osler Institute is a test preparation company head-
quartered in Indiana. Osler runs 60 to 70 seminars a year
to help doctors prepare for specialty medical board exami-
nations. Dr. Joseph Selliken is Osler's founder and presi-
dent, and for most of the company's history he and his
wife have been the sole members of its board of directors.

In 1995 Osler hired Lois Forde—Dr. Selliken's second cousin—on a part-time basis to coordinate a few seminars a year. Forde's job involved mainly administrative tasks, many of which revolved around the guest lecturers who taught the substantive material at the seminars. These tasks included choosing the lecturers for a seminar from Osler's lists, arranging the logistics of the lecturers' participation, taking the lecturers to dinner, administering evaluations of the lecturers, and helping to determine if a lecturer would receive a bonus. In addition, Forde reported any problems at the seminar to Osler. When Forde began her job, she signed an employment agreement containing a non-compete clause.

Three years after Forde started working for Osler, Dr. Selliken offered her a position on the board of directors. Forde conditioned her acceptance on an independent audit of Osler's financial status and indemnity insurance—conditions Osler never met. Nevertheless, after Dr. Selliken's offer, Forde attended four board meetings. She was a vocal participant and even kept minutes for the meetings, referring to herself as the "secretary designate." Forde downgraded herself to "guest" at the last meeting—apparently recognizing that her conditions to becoming an official board member were not going to come to pass. Osler never listed Forde as a director on its annual state filings.

Time passed, and at an Osler seminar in January 2000, Forde commented—in front of others—that Dr. Selliken may have taken a volunteer patient at a seminar to a motel and that his behavior was inappropriate. On April 15, 2000, Forde and Osler parted ways (it's unclear whether Forde quit or was fired, but it doesn't matter for our purposes). That same month, Dr. Peter Rosenbaum contacted Forde and invited her to work for PsyPrep, a new psychiatry board preparation company run by former Osler lecturers. Forde knew the members of PsyPrep

through her work at Osler. Despite Forde's employment agreement with Osler and the clear connection between Osler and the members of PsyPrep, she accepted Dr. Rosenbaum's invitation, invested a small sum of money in the company, and began working for PsyPrep. Forde's work consisted of administrative tasks, like obtaining business licenses and a post office box for the company, and taking calls for PsyPrep on a line she installed in her home, and marketing work, such as developing a brochure for PsyPrep's first planned seminar in April 2001 and inquiring about advertising possibilities.

Dr. Selliken soon learned of Forde's work with PsyPrep, and he wasn't pleased. He couldn't find Forde's employment agreement (with the noncompete clause), so he tried to get her to sign a new one. Forde refused. Later, Dr. Selliken located Forde's 1995 employment agreement and, in January 2001, sent a copy of that agreement to her—along with a draft of the complaint in this case. Facing a possible federal lawsuit, Forde sprang into action. By the end of January, she had resigned from PsyPrep, received her initial investment back, and turned over all of her PsyPrep materials. Without any more assistance from Forde, PsyPrep went on to offer its first board review course in April 2001, holding three or four courses that year.

Osler moved ahead with this lawsuit—Forde's resignation from PsyPrep and family relationship with Dr. Selliken notwithstanding. Osler claimed that Forde breached her employment agreement and fiduciary duties, intentionally interfered with its relationship with its lecturers, and slandered Dr. Selliken. Neither party filed any dispositive motions and the case appeared to be headed for trial—until the pretrial conference on July 8, 2002. At the pretrial conference, Chief Judge Larry J. McKinney said he was concerned about issues raised in the parties' trial briefs. Specifically, Judge McKinney pointed to prob-

lems with the validity of Forde's employment agreement, the calculation of damages, and Osler's interference with business relationships and slander claims. Based on these concerns, Judge McKinney vacated the July 22, 2002, trial setting and told the parties to prepare for oral argument on the issues in the trial briefs instead.

Oral argument was held and, about a month later, Judge McKinney issued a ruling dismissing all of Osler's claims. The breach of contract claim failed because Judge McKinney determined the underlying employment agreement was invalid. Judge McKinney did not find that Forde had any fiduciary duties to Osler, dooming the breach of fiduciary duty claim. The intentional interference with business relationships count was jettisoned due to a lack of evidence that Forde engaged in illegal conduct—an element of the claim. Finally, Osler's last claim, slander, was dismissed as a sanction for dilatory actions during discovery.

On appeal, Osler doesn't question the dismissal of its slander claim. As far as the other claims, Osler protests that the district court didn't give sufficient notice that it was contemplating entering judgment sua sponte. Also, while Osler doesn't formally identify the merits of the district court's decision as an issue on appeal, it devotes a portion of its brief to that topic, so we'll address the merits of Judge McKinney's opinion, too. First, the procedural issue.

As a preliminary note of clarification, we are aware that the district court never explicitly said that it was entering *summary judgment* sua sponte, but that's clearly what happened. In the absence of pending dispositive motions, the district court looked to matters outside the complaint to determine that Forde was entitled to judgment as a matter of law. We find the district court's statement that it was ruling on Forde's motions in limine a

little mysterious (Forde hadn't filed any motions in limine), but the solution to that puzzle doesn't impact our analysis, so we'll leave it unsolved.

With that speed bump out of the way, we can analyze whether it was cricket for the district court to enter summary judgment on its own motion. Granting summary judgment sua sponte is permissible, although it is a hazardous procedure which warrants special caution. *See Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002) (citing *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992), and *Sawyer v. United States*, 831 F.2d 755, 759 (7th Cir. 1987)). When there are no issues of material fact in dispute, a district court may grant summary judgment on its own motion—as long as the losing party is given notice and an opportunity to come forward with its evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Goldstein v. Fidelity and Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996) ("The party against whom summary judgment is entered must have notice that the court is considering dropping the ax on [it] before it actually falls."). In short, summary judgment should not take a party by surprise. *See Choudhry v. Jenkins*, 559 F.2d 1085, 1089 (7th Cir. 1977).

Despite Osler's protests to the contrary, the district court's entry of judgment should not have caught it off guard. Judge McKinney made numerous comments alerting Osler that its claims were in peril. For example, during the pretrial conference (after Forde submitted her trial brief arguing that much of the case could be decided as a matter of law), Judge McKinney said:

- "These trial briefs raise some troublesome issues, which I would like to discuss a little bit today" and that some of the arguments "appear to be relatively dispositive of some issues that may or may not be presented at trial."

• After finding out that counsel for Osler had only received Forde's trial brief a few minutes earlier, Judge McKinney said, "Well, it is a pretty serious trial brief. . . . I would suggest that you need more than two minutes to look at this because there is an issue here on defamation that is fairly dispositive. There are issues on the interference with contractual relationships, and there are some serious matters about the validity of the employment contract signed by Miss Forde. So some of those issues could, in fact, impact the Court's jurisdiction in this case."

• Judge McKinney ended the conference by telling the parties that he was vacating the trial date so that he could hear arguments on these issues instead and then he would "reset this case about 30 days later, *or not*, depending on what we decide." He told counsel to bring their clients to the argument.

Following the conference, Judge McKinney issued an order stating that "it is apparent that there are several issues that may be resolved before trial as a matter of law" and that "[i]t is clear that these issues must be resolved before the case is presented to a jury." At the end of the oral argument itself, Judge McKinney concluded by saying "I'll do my best to give you a ruling on this without too much delay."

Judge McKinney's statements seem clear to us. He said, point blank, that Forde had raised issues of law that should be resolved before trial and, after deciding those questions, there might not be a trial. Osler didn't object, ask for clarification, or in any way show that it was confused about the district court's actions during either the pretrial conference or the oral argument. Based on Judge McKinney's statements and Osler's acquiescence to the proceedings, we have to ask what Osler thought the

judge was doing, if not potentially disposing of the case, or at least a major slice of it, without a trial.

Osler says that it thought that the judge would address jurisdictional issues, the reasonableness of the duration and scope of the employment agreement, the appropriateness of the liquidated damages provision, and "matters specifically raised in the trial briefs." Osler's answer essentially concedes that it knew the district court planned to resolve *some* issues of law—it just didn't think Judge McKinney would address *all* the issues of law. But Forde's trial brief raised all of the matters the district court addressed, not just those Osler notes. Why would Osler think the district court was going to address some questions of law and not others—particularly when Judge McKinney specifically mentioned that he wanted to discuss other points, like the validity of the employment agreement, at the pretrial conference? Osler clearly knew the issues that were bothering the judge. It wasn't ambushed by an argument that it couldn't possibly address. *See Aviles v. Cornell Forge Co.*, 183 F.3d 598, 604-05 (7th Cir. 1999) (court improperly granted sua sponte summary judgment on issue raised in movant's reply brief). Furthermore, it knew these issues were potentially dispositive. *See, e.g.*, *Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 550 (7th Cir. 1999) (sua sponte summary judgment reversed when court said party should submit a list of cases prior to filing amended complaint, with no mention of summary judgment). Judge McKinney gave Osler sufficient notice that he was considering summary judgment.

Aside from the notice issue, Osler raises two other procedural concerns about the entry of summary judgment. Osler didn't list these arguments as part of its issue on appeal but, for what it's worth, we find both without merit. First, Osler says that the district court didn't allow it sufficient time under the local rules to

respond to the sua sponte summary judgment motion. *See* S.D. Ind. L.R. 56.1(b) (nonmovant has 30 days to respond to summary judgment motion). The district court did not abuse its discretion applying the local rules, see *Borcky v. Maytag Corp.*, 248 F.3d 691, 697 (7th Cir. 2001), when Osler agreed to the timing of the date set for oral argument at the July 8 pretrial conference. Second, Osler quibbles with the district court's statement of the facts, asserting it could have marshaled more evidence to support its claims and the district court relied on unsupported statements. The first part of this argument is unsuccessful because Osler had sufficient notice that summary judgment was afoot and that it needed to defend its claims—a squandered opportunity is not grounds for reversal. *See Divane v. Krull Elec. Co.*, 194 F.3d 845, 848-49 (7th Cir. 1999). As far as the district court's reliance on unsupported statements, Osler doesn't tell us what statement the district court relied upon that was unsupported and affects the outcome of this case. To sum up, while sua sponte summary judgment is not a recommended path for a district court to take, Judge McKinney did not commit any procedural errors in this case.

Having determined that the district court's decision to enter summary judgment sua sponte was not erroneous in and of itself, we turn to the disposition of Osler's substantive claims, which we review *de novo*. *See Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 601-02 (7th Cir. 2001).

Osler contends that Forde's work with PsyPrep breached the noncompetition clause in the parties' employment agreement. Judge McKinney dismissed this claim, finding the parties' employment agreement void. Under Indiana law, which applies in this case, covenants not to compete in employment agreements are disfavored and must be reasonably necessary to protect an employer's interests. *See Ackerman v. Kimball Int'l, Inc.*, 652 N.E.2d 507, 509-10 (Ind. 1995). A non-compete agreement is reasonably nec-

essary if an employer shows "the former employee has gained a unique competitive advantage or ability to harm the employer." *Titus v. Rheitone, Inc.*, 758 N.E.2d 85, 92 (Ind. Ct. App. 2001). In other words, the employer must show some reason why it would be unfair to let the former employee compete with it. *See id.*

Osler asserts that it had a protectible interest in Forde's future employment because she administered lecturer evaluations, knew the criteria used on the evaluations, was responsible for reporting complaints, discussed who should receive bonuses, and had developed relationships with lecturers. In essence, Osler worries that a person in Forde's position could cultivate a relationship with its best lecturers—knowing who might be unhappy and willing to jump ship—and convince them to form a competing company. We see three problems with Osler's evidence. First, some of the things Forde learned, like the names of the lecturers, were a matter of public knowledge and not protectible confidential information. *See Titus*, 758 N.E.2d at 93 (confidential customer information protectible). Second, Forde's job primarily consisted of administrative tasks. Osler may not restrict Forde from using any general organizational or administrative skills. *See Brunner v. Hand Indus., Inc.*, 603 N.E.2d 157, 160 (Ind. Ct. App. 1992) (citing *Donahue v. Permacel Tape Corp.*, 127 N.E.2d 235, 240 (Ind. 1955)) (no protectible property interest in employee's general knowledge, information, or skills, even if gained in the course of her employment). Third, Forde's job with PsyPrep did not utilize any of the potentially protectible information she might have learned. While Osler may have a protectible interest in the goodwill of its lecturers, there's no evidence that Forde misappropriated that goodwill. *See Unger v. FFW Corp.*, 771 N.E.2d 1240, 1244 (Ind. Ct. App. 2002) (protectible interest found when disgruntled former employee harmed goodwill by using employer's confidential

customer list). Forde's position at PsyPrep involved only administrative and marketing tasks—there's no evidence that Forde did anything to harm the goodwill between Osler and its lecturers. Thus, Osler has failed to show that the noncompete clause was reasonably necessary, so it is void, and Osler's breach of contract claim must fail.

We can make short work of Osler's claim that Forde breached her fiduciary duties. To sustain this claim, Osler must identify the source of any fiduciary duties. Osler says Forde's fiduciary duties arose from her role as a de facto director. A de facto officer or director is someone who assumes an office or position under color of right or title and exercises the duties of the office. *See In re Bankers Trust*, 403 F.2d 16, 20 (7th Cir. 1968). As noted in reviewing the similar doctrine of de facto public officers, a de facto officer must claim her office. *See Sullivan v. City of Evansville*, 728 N.E.2d 182, 190 (Ind. Ct. App. 2000) (analyzing ability to collaterally attack decisions of de facto officers). Forde never claimed that she was a director or an officer. Although she attended four board meetings and took notes, the minutes of each meeting listed her as a "board member *designate*" (or even just "guest") and stated that she would not join the board until an independent audit was completed and she had indemnity insurance. The district court correctly found that Forde was not a de facto director. Osler doesn't argue that there is any other source of fiduciary obligations, so its breach of fiduciary duty claim fails.

Osler's last claim is that Forde intentionally interfered with its relationship with the lecturers who formed PsyPrep. Judge McKinney dismissed this claim because Osler did not show Forde's conduct was illegal—an element that Osler now contends is not necessary (this is apparently a new belief because Osler's trial brief does mention illegality in connection with this claim). While intentional interference with *contractual* relationships

does not require illegal conduct, intentional interference with *business* relationships does. *See Levee v. Beeching*, 729 N.E.2d 215, 220-23 (Ind. Ct. App. 2000). We're aware that the latest Indiana Supreme Court case mentioning intentional interference with business relationships did not list illegal conduct as an element. *Felsher v. University of Evansville*, 755 N.E.2d 589 (Ind. 2001). But *Felsher* cited *Levee*—which lists illegal conduct—in support of the elements of the claim. *See Felsher*, 755 N.E.2d at 598 n.21. We don't think this was a mere oversight on the part of the Indiana Supreme Court. Barring more specific guidance on the matter, a showing of illegal conduct, which Osler did not make, is required for intentional interference with business relationships under Indiana law.

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*