

FILED
Dec 07 2015, 8:47 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| J. Blake Hike | James J. Shea, Sr. |
| Larry L. Barnard | Linda A. Polley |
| Carson Boxberger LLP | Jeremy D. Lemon |
| Fort Wayne, Indiana | Hunt Suedhoff Kalamaros LLP |
| | Fort Wayne, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael A. Wartell, | December 7, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 02A03-1503-PL-81 |
| v. | Appeal from the Allen Superior Court |
| Lawrence H. Lee, | The Honorable Stanley A. Levine, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 02D03-1306-PL-232 |

**Mathias, Judge.**

[1] Dr. Michael Wartell ("Wartell"), former Chancellor of Indiana University Purdue University Fort Wayne ("IPFW"), filed a complaint in Allen Superior Court against Lawrence Lee ("Lee"), alleging among other claims, defamation *per se* because Lee sent a private letter to then-Purdue president Dr. France

Córdova ("Córdova") urging her to deny Wartell's request for an exception to Purdue's retirement policy. The trial court subsequently granted Lee's motion for partial summary judgment on the claim of defamation *per se*. Wartell now appeals and argues that the trial court erred in concluding that Lee's statements in the letter to Córdova did not constitute defamation *per se*.[1]

We affirm.

## Facts and Procedural History

Wartell served as the chancellor of IPFW for eighteen years, from 1994 until June 30, 2012. IPFW is the largest state university in Northeast Indiana and had an enrollment of over 14,000 students when Wartell left his position as chancellor. During Wartell's tenure, IPFW experienced positive growth and a strong reputation as a university. As chancellor, Wartell was well-known in the Fort Wayne community.

Wartell was employed by Purdue University ("Purdue") and reported to the Purdue Board of Trustees ("the Board") through the Purdue president. Appellant's App. p. 126. Throughout his service as chancellor, Wartell was subject to administrative review, where Purdue and IPFW officials would interview individuals from Purdue, IPFW, and the community about Wartell's

---

[1] We held oral argument on this appeal on October 14, 2015, at the Allen County Courthouse in Fort Wayne, Indiana. We extend our gratitude to the Allen County Bar Association's Appellate Law Section for their hospitality and commend counsel for the quality of their written and oral advocacy.

job performance. Integrity was one of the areas subject to review and a category in which Wartell always received "the highest marks." Appellant's App. pp. 119-20.

[5] At the time, Purdue procedure required that chancellors be re-appointed on a year-to-year basis with the underlying contract renewed each year. Purdue policy required high-ranking administrators to retire from their positions during the fiscal year which they turn sixty-five. Appellant's App. p. 128. *See also* Appellee's App. pp. 23-25. Because of the policy, Wartell was required to retire at the end of the fiscal year in 2012 unless the Board agreed to extend his chancellorship. Wartell was aware of this policy, but he did not believe that he would be required to retire because no other high-ranking Purdue officials had been previously denied an extension request. On May 19, 2011, Wartell received a phone call from then-Purdue President Córdova, notifying him that the Board wanted Wartell to retire. In response to the call, Wartell submitted a request to the Board to extend his position beyond the mandatory retirement date. Appellee's App. p. 18. Wartell's request was denied, and he retired as chancellor on June 30, 2012.

[6] Lee, a Fort Wayne businessman and owner of Leepoxy Plastics and president of Midwest Epoxy Applicators, is an active citizen in the Fort Wayne community and a longtime IPFW donor and supporter. Appellee's App. pp. 13, 70, 78-80. Lee was also on the Advisory Board for the Doermer School of Business at IPFW. *Id.* at 32-33. Lee had worked with Wartell on numerous occasions over the years, and that collaboration had sparked some

disagreements. After discovering that Wartell had requested that the Board extend his chancellorship in spring of 2011, Lee contacted several other prominent businessmen in the community to arrange a meeting with Córdova to convince her that the Board should deny Wartell's request. Lee referred to this group of men as "the Worthy Brothers" which consisted of Keith Busse ("Busse"), Ian Rolland ("Rolland"), and Jim Vann ("Vann").

[7]     In an email sent to the group on June 22, 2011, Lee confirmed that their goals in a meeting with Córdova were "two-fold: (1) to express our conviction that Wartell's request to delay his retirement should be denied, and (2) his successor as chancellor at IPFW be of impeccable integrity, able to earn and command the respect of local and area business leaders." Appellant's App. p. 201. Additionally, Lee informed the group that he had learned "from a very reliable source that Córdova is the one and only determiner on Wartell's petition to delay [Wartell's] retirement date." Appellant's App. pp. 167, 201. A Skype meeting was scheduled on June 29, 2011, for Lee, Rolland, Busse, and Vann to discuss Wartell's extension request with Córdova. At the end of the meeting, Córdova requested that each of the men submit written comments to her and that she would confidentially submit the information to the Board. Appellant's App. pp. 64-66.

[8]     Lee sent a confidential letter to Córdova as requested on July 1, 2011. Lee discussed some of Wartell's accomplishments as chancellor but also expressed his concerns to Córdova about the Board granting Wartell's extension request.

At issue in this appeal are the following allegedly defamatory statements contained in Lee's letter, as asserted in the plaintiff's complaint:

- "[Wartell's] word not always serving as his bond."

- "Too often, with persons in a variety of capacities in a variety of situations, he has broken faith."

- "Lack of integrity."

- "How can IPFW be the leading force it should be in our community and among our small area universities when too frequently its chancellor's character is at issue."

- "In the past couple of year [sic] it has become clear that significant financial support from foundations and area business will be hard to come by while [Wartell] remains as chancellor."

- "[W]e deserve a chancellor with impeccable integrity, the willingness to cooperate with other area universities, and the esteem to inspire complete trust from our business community."

Appellant's App. pp. 26-38. Rolland and Busse also sent letters to Córdova that echoed Lee's sentiments. Wartell learned about Lee's letter from a Purdue Trustee. At that time, he also was told that Lee's letter was the only correspondence given to the Board for consideration.[2]

Wartell filed a complaint against Lee on June 21, 2013 in Allen Superior Court, alleging defamation *per se*, defamation *per quod*, tortious interference with contractual rights, and tortious interference with a business relationship. On

---

[2] After discovering this information, Wartell believed that Córdova's intent was to replace him with a woman. He subsequently filed a gender discrimination law suit against Purdue.

August 29, 2013, Lee moved for summary judgment on all issues and also asserted a defense under the Anti-SLAPP Statute[3] and the qualified privilege of common interest defense. A hearing was held on Lee's motion for summary judgment, and on February 3, 2015, the trial court issued an order granting the motion in part and denying it in part. Specifically, the trial court granted partial summary judgment on the defamation *per se*, tortious interference with contractual rights, and tortious interference with a business relationship claims, but denied summary judgment on the Anti-SLAPP Statute defense, the qualified privilege of common interest defense, and the defamation *per quod* claim. Wartell now appeals the trial court's order granting Lee summary judgment on the defamation *per se* claim.[4]

## Standard of Review

[10] Our standard of review of summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must

---

[3] The Anti-SLAPP (Strategic Lawsuit Against Public Participation) Statute is codified in Indiana Code section 34-7-7-5 and provides that "[i]t is a defense in a civil action against a person that the act or omission complained of is: (1) an act act or omission of that person in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue; and (2) an act or omission taken in good faith with a reasonable basis in law and fact."

[4] Lee filed a cross-appeal on the issues that the trial court denied summary judgment. Wartell filed a motion to dismiss cross-appeal, arguing that this court did not have jurisdiction because the trial court did not enter a final judgment on those claims under Trial Rule 54(B) or 56(C). This court granted Wartell's motion to dismiss Lee's cross-appeal in an order dated July 17, 2015.

determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. In answering these questions, the reviewing court construes all factual inferences in the nonmoving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Once the movant satisfies the burden, the burden shifts to the nonmoving party to designate and produce evidence showing the existence of a genuine issue of material fact.

*Likens v. Prickett's Properties, Inc.*, 943 N.E.2d 816, 820 (Ind. Ct. App. 2011) (citations and internal quotations omitted).

## Discussion and Decision

Wartell argues that the trial court erred in granting Lee's motion for summary judgment because he asserts that Lee's statements in the letter sent to Córdova were defamatory *per se*. "To establish a claim of defamation, a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010). A statement is defamatory if it tends "to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos,* 865 N.E.2d 593, 596 (Ind. 2007) (citation omitted). ". . . [D]efamation *per se*, arises when the language of a statement, *without reference to extrinsic evidence*, constitutes an imputation of: (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct." *Dugan*, 929 N.E.2d at 186 (emphasis added).

[12] "For a statement to be actionable [as defamation *per se*], it must be clear that it *contains objectively verifiable fact regarding the plaintiff*. If the speaker is merely expressing his subjective view, interpretation, or theory, then the statement is not actionable." *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015) (emphasis added) (citing *Hamilton v. Prewett*, 860 N.E.2d 1234, 1243 (Ind. Ct. App. 2007). "In an action for defamation *per se*, the words used must have defamatory imputation on their face. *The circumstances in which the statements were made have no bearing on whether the statements constitute defamation per se.*" *Big Wheel Restaurants, Inc. v. Bronstein*, 302 N.E.2d 876, 879 (Ind. Ct. App. 1973) (emphasis added). Importantly, in actions for defamation *per se*, damages are presumed, while in actions for defamation *per quod*, a plaintiff must prove damages. *Dugan*, 865 N.E.2d at 186. As quickly becomes apparent in a review of the relevant case law, defamation cases are highly fact-sensitive.

[13] Wartell asserts that Lee's statements in his letter to Córdova imputed misconduct by Wartell as former chancellor of IPFW. He argues that the purpose of Lee's correspondence to Córdova was to remove Wartell as chancellor, and as such, has defamatory meaning without any need for extrinsic evidence. In general, if words falsely written or uttered directly tend to prejudice or injure a person in his profession, trade, or business, they can be actionable *per se*. *Erdman v. White*, 411 N.E.2d 653, 658 (Ind. Ct. App. 1980).

[14] In *Erdman*, a corporation's chairman of the board wrote a letter to a bank president regarding the "questionable reputation" of the corporation's former president, who remained a personal guarantor on the company's line of credit.

The former president brought an action against the chairman alleging defamation *per se*, among other claims. *Id.* The trial court entered a default judgment on the defamation *per se* claim against the chairman and awarded damages to the former president. *Id.* at 655. The chairman appealed, and our court held that the chairman's statement in the letter to the bank president injured the former president in his profession, trade, or business because it negatively affected his ability to obtain a line of credit from the bank after the letter was sent. *Id.* at 659. Additionally, the former president was no longer in good credit standing with the bank, which adversely impacted his business and personal finances. *Id.*

[15] Further, Wartell argues that Lee's remarks questioned Wartell's characteristics and conduct in his role as chancellor and as such are "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *See Moore v. Univ. of Notre Dame*, 968 F.Supp. 1330, 1334 (N.D.Ind. 1997).

[16] Lee argues that the statements in his letter to Córdova are not defamatory *per se* because he was merely expressing a subjective opinion about Wartell and therefore are not actionable. *See Meyer*, 31 N.E.3d at 515. Lee claims that his statements about Wartell's word not always serving as his bond, or that his "character is at issue," or that he "lacks integrity," or has "broken faith" cannot be objectively verified. Lee supports his position with *Levee v. Beeching*, 729 N.E.2d 215 (Ind. Ct. App. 2000) and *Baker v. Tremco*, 917 N.E.2d 652 (Ind. 2009). We find both cases instructive.

[17]     In *Levee*, a school principal sued a teacher's union and the union representative for defamation *per se,* among other claims. 729 N.E.2d at 218. The trial court granted summary judgment for the union and union representative and the principal appealed. *Id.* Our court held that the union representative's remarks calling the principal a "liar" and stating that she "favored some staff" were not defamatory *per se* because his words were not "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Id.* at 220. This court additionally noted that the union representative's comments were only defamatory with reference to his pattern of personal attacks against the principal, meaning the statements were not defamatory on their own, without extrinsic evidence. *Id.*

[18]     Our supreme court in *Baker* provided even more guidance on defamation *per se*. Plaintiff was a former employee of the defendant, who had quit because of a workplace dispute with the defendant. 917 N.E.2d at 652-53. After quitting his job, plaintiff started his own business that was similar to his former employer's. Plaintiff brought suit against his former employer for defamation *per se*, among other claims, because an employer's representative commented that "[plaintiff] had engaged in 'inappropriate' sales practices." *Id.* at 657. Our supreme court found that this statement was "far too vague to conclude that [it was] so obviously and naturally harmful that proof of [its] injurious character c[ould] be dispensed with." *Id.* at 658. As such, the statement was not defamatory *per se*. Additionally the court clarified:

> Indeed, it may be inferred from use of the word "inappropriate" that the sales practice did not amount to any misconduct. This makes clear that in order for the statements to be defamatory *per se*, the statements must impute "misconduct."

*Id.* The phrase, "inappropriate sales practice," although directed toward plaintiff's "trade, profession, or occupation," did not impute "misconduct" and therefore could not be defamatory *per se*. *Id.*

[19]  Lee's statements in the letter to Córdova were less harsh than the union representative's comments about the principal in *Levee* and much like the vague comments made by the employer's representative about the former employee in *Baker*. Lee commented that Wartell's word did not always serve as his bond, but did not call him a liar. Further, Lee's statements were generalizations about Wartell's character and conduct "in a variety of capacities in a variety of situations," although directed at his role as chancellor. Like the representative's statement in *Baker*, Lee's statements were directed toward Wartell's trade, profession, or occupation but did not impute misconduct. Wartell does not establish that the statements were objectively verifiable without referring to extrinsic evidence.

[20]  In *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184 (Ind. 2010), our supreme court determined that statements made by an employee's supervisor qualified to be considered as defamation *per se*. Plaintiff alleged in her complaint that defendant stated to other employees that plaintiff was "stealing time," working on a "scheme with her boss. . . allegedly an attempt to defraud the Company," and "stealing an air compressor from the Company." *Id.* at 187. The court

concluded, "[a]s statements imputing criminal conduct or occupational misconduct, these alleged statements clearly qualify for consideration as defamation *per se*." *Id.* This determination was made without reference to extrinsic evidence.

[21] We believe that *Dugan* is a good example of a situation where statements imputed misconduct in a person's trade, profession, office, or occupation without resort to extrinsic evidence, and were statements that were so obviously and naturally harmful that proof of their injurious character could be dispensed with. In *Dugan*, the defendant accused plaintiff of stealing time, attempting to defraud the company with help from her boss, and stealing an air compressor. These statements were not subjective opinion but rather were objectively verifiable and defamatory on their face.

[22] In contrast, Lee's statements are vague and not objectively verifiable without referring to extrinsic evidence. Lee mentioned no specific incidents of misconduct but rather made general statements about Wartell's character and conduct in his role as chancellor. Although Lee's statements in his letter to Córdova were arguably defamatory, the vagueness with which they are stated prevents them from imputing misconduct and rising to the level of defamation *per se*.

[23] It is understandable and indeed tempting to leap from a determination that an allegedly defamatory statement is related to a person's trade, profession, office, or occupation to the conclusion that the statement is defamatory *per se*.

However, that is simply not the proper legal analysis. As a matter of law, for an allegedly defamatory statement to qualify as defamation *per se,* it must impute not only the serious level of misconduct of the type described in *Dugan*, but also in a way that does not require reference to extrinsic facts for context. Here, Lee's statements require development of the underlying factual context in the legal determination of whether they were defamatory, and as such, the statements are not actionable as defamation *per se*.

[24] For all of these reasons, we conclude that no genuine issues of material fact exist as to whether Lee's statements were defamatory *per se* and that the trial court did not err in granting Lee's motion for summary judgment on the issue of defamation *per se*.

[25] Affirmed.

Barnes, J., and Crone, J., concur.