

FILED

May 18 2016, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Patrick F. O'Leary
Goshen, Indiana

ATTORNEYS FOR DAVID W. BIRKY

Jeffery A. Johnson
Brett R. Hummer
May Oberfell Lorber
Mishawaka, Indiana

ATTORNEYS FOR INTERRA CREDIT UNION

Jeffrey L. Lund
Landon K. Richmond
Yoder Ainlay Ulmer &
Buckingham, LLP
Goshen, Indiana

ATTORNEYS FOR VENTURE INTERNATIONAL LLC AND CURT BECHLER

Ronald E. Elberger
Bryan H. Babb
Bradley M. Dick
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jack Sheets,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>David Birky, Interra Credit<br>Union, Curt Bechler, and<br>Venture International, LLC.,<br>*Appellees-Defendants* | May 18, 2016<br><br>Court of Appeals Case No.<br>20A04-1509-PL-01620<br><br>Appeal from the Elkhart Superior<br>Court<br><br>The Honorable Evan S. Roberts,<br>Judge<br><br>Trial Court Cause No.<br>20D01-1309-PL-222 |

**Bailey, Judge.**

# Case Summary

[1] Jack Sheets ("Sheets") was discharged from his employment with Interra Credit Union ("Interra"). He subsequently filed a complaint alleging that Interra Vice-President David Birky ("Birky") had committed defamation per se, for which Interra was vicariously liable; and that management consultant Venture International, LLC ("Venture") and its owner, Curt Bechler ("Bechler"), had been negligent in the monitoring of Sheets's condition after sick leave, had negligently investigated and reported a hotline call, had breached a fiduciary duty, and had intentionally interfered with Sheets's employment-at-will contract with Interra. Summary judgment was granted to Birky and Interra; partial summary judgment was granted to Venture and Bechler. Negligence and tortious interference claims against Venture and Bechler proceeded to trial, and a jury found in favor of the defendants. Sheets challenges the grant of

summary judgment to Birky and Interra and the judgment in favor of Venture and Bechler on the claim of interference with an employment contract.[1] We affirm.

# Issues

Sheets presents two issues for review:

    I.    Whether summary judgment was improvidently granted to Birky and Interra upon the defamation per se claim; and

    II.    Whether the trial court abused its discretion in instructing the jury regarding legal protection of an employment-at-will contract.

# Facts and Procedural History

In 1976, Interra hired Sheets as a manager trainee. Sheets eventually became the President and CEO of Interra, reporting to Interra's Board of Directors ("the Board"). Venture was hired to perform an organizational assessment in 2007 and again in 2011.[2]

---

[1] Sheets does not challenge the earlier grant of partial summary judgment to Venture and Bechler, nor does he challenge the judgment entered upon the jury verdict as to the claim of negligence against Venture and Bechler.

[2] When deposed, Bechler described an organizational assessment as a procedure that "seeks to identify perceptions and seeks to identify issues of concern by the employees and the management team regarding how the organization is functioning. . . . It gives the leadership of the organization feedback on how they're being perceived and how they're functioning." (App. at 199-200.)

On January 4, 2011, Sheets experienced an inter-cerebral hemorrhage. After a four-month medical leave, Sheets returned to work on a restricted basis. In April of 2011, the Board expanded Venture's duties to include acting as a liaison between Sheets and his medical team.[3] In August of 2011, Sheets returned to work full-time without restrictions.

As part of its 2011 Organizational Assessment, Venture recommended the installation of a Compliance Hotline accessible to Interra employees. Employees were advised to: "Use the Compliance Line to report a serious concern or a suspected policy violation." (App. at 265.) After the completion of the 2011 assessment, Venture's responsibilities primarily concerned monitoring and reporting calls coming into the hotline in exchange for a $100.00 monthly fee.

On August 18, 2012, Birky called the hotline, identified himself, provided his telephone number, and left the following message:

> My concern is about the fitness of leadership of Jack Sheets, our President and CEO. I've had significant concerns about my own personal level of frustration in interactions with Jack over the past month. Since, my perception is that since almost from the day that Venture International disengaged in their consulting contract with Interra, Jack has become considerably more aggressive. Jacks' cognitive ability to process and follow conversations when there are multiple voices around the table has its [sic] significantly impaired in my opinion and his ability to

---

[3] This role formed the basis of one of Sheets's negligence claims against Venture and Bechler.

focus on what's important and the particular issue and accept and follow conversations is also significantly less than optional [sic] or ideal. I have, also have documentation of multiple conversations that I personally have had with Jack where he refuses to accept an answer or explanation and simply comes back over and over and over again asking the same question over and over again and being unable to process or understand what he is being told. I've also had responses from Jack that say he does not want to have a debate with me he simply wants me to listen to his point of view and I have been frustrated and unaccepting of that type of one way conversation instead of a dialogue. I've also had feedback from respected peers within the credit union industry who view Jack and have expressed their view to me as not being fit for leadership of a credit union and at some level view him as being an embarrassment to the credit union as a whole. Almost everyone likes Jack but there is some sense of true bewilderment that he is in charge of a credit union this size and on the track that it's on. I believe that there are other members of the Senior Management team that share my feelings; however, I am speaking for myself and would be happy to provide additional feedback and specifics at any time. So I appreciate the follow-up and look forward to hearing from a communication specialist soon.

(App. at 162.)

[7] Venture contacted Birky regarding the call, and provided a transcript of the call to Interra's Board of Directors. Effective March 21, 2013, the Board discharged Sheets from his employment.

[8] Sheets filed a complaint against Birky, alleging defamation per se. The complaint was twice amended to add additional defendants and allegations. Ultimately, Sheets's Third Amended Complaint consisted of six counts. Count

1, captioned Defamation Per Se, contained allegations that Birky defamed Sheets. Count 2 (also captioned Defamation Per Se), alleged that Birky had acted within the course and scope of his employment with Interra, such that Interra should be vicariously liable to Sheets. Count 3 (Negligence) included allegations that Venture and Bechler had agreed to monitor Sheets's medical treatment and recovery following a brain hemorrhage but had acted negligently in monitoring and then reporting to Interra. Count 4 (Negligence) included allegations that Venture and Bechler failed to use reasonable care in the handling of Birky's allegations. Count 5 (Intentional Interference) included allegations that Bechler intentionally interfered with Sheets's employment relationship with Interra by making false reports as to Sheets's cognitive abilities and by "lobbying the Board in person." (App. at 56.) Finally, Count 6 alleged a breach of fiduciary duty by Venture and Bechler.

[9] The parties filed various cross-motions for summary judgment. Following a hearing, the trial court granted summary judgment to Birky and Interra. Also, partial summary judgment was granted to Venture and Bechler. They were granted summary judgment on Count 3 (negligence in monitoring and reporting) and Count 6 (breach of fiduciary duty). A jury trial was conducted on the claims of negligence in handling of the hotline report and intentional interference with an employment relationship. At the conclusion of a nine-day trial, the jury found in favor of Venture and Bechler. This appeal ensued.

## Discussion and Decision

# Summary Judgment Standard of Review

[10] A trial court's grant of summary judgment on appeal to this Court is "clothed with a presumption of validity," and an appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009). Our standard of review is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

*Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269-70 (Ind. 2009) (internal citations omitted).

[11] When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 608

(Ind. Ct. App. 2008), *trans. denied*. The role of the trial court at summary judgment is not to act as a trier of fact, but rather to determine whether the movant established, prima facie, either that there is insufficient evidence to proceed to trial, or that the movant is otherwise entitled to judgment as a matter of law. *Kader v. State Dep't of Corr.*, 1 N.E.3d 717, 727 (Ind. Ct. App. 2013). Witness credibility and the relative apparent weight of evidence are not relevant considerations at summary judgment. *Id.*

## Grant of Summary Judgment to Birky and Interra

[12] The trial court granted summary judgment to Birky on Sheets's defamation per se claim, concluding that Birky's statements made in the hotline call did not "impute misconduct" or include an allegation of malfeasance, such that "to the extent those comments relate to [Sheets's] employment and profession, [they] are not defamatory per se." (App. at 22.) Because the allegation against Interra was one of vicarious liability, Interra was also granted summary judgment.[4]

[13] On appeal, Sheets observes that Birky "alleged conduct that Sheets had committed that was inconsistent with his fitness to serve as president/CEO." (Appellant's Br. at 10.) He then argues that this falls within a defamation per se

---

[4] The trial court additionally concluded that, because the communication at issue was not defamatory per se, there was no need to reach the claimed defense of qualified privilege. *See Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 262 (Ind. 1994) (recognizing that the qualified privilege of common interest "applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty.") To defeat application of the privilege, the evidence must show that the speaker "lacked any grounds for belief as to the truth of the statements." *Bals v. Verduzco*, 600 N.E.2d 1353, 1357 (Ind. 1992).

category described in a concurring opinion in *Gibson v. Kincaid*, 221 N.E.2d 834, 843 (Ind. Ct. App. 1966), that is, words that "tend to injure another in his office, profession, trade, business or calling."[5] Interra and Birky respond that, in order to constitute defamation per se, a communication related to one's profession must impute actual misconduct.

[14] In order to establish a claim of defamation, a plaintiff must prove (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010). A statement is defamatory if it tends "to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos,* 865 N.E.2d 593, 596 (Ind. 2007)*.* This is not to say that all statements having a defamatory imputation are defamation per se.

[15] An action for defamation per se "arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade,

---

[5] Alternatively, Sheets argues that his complaint may be understood as stating an additional claim, defamation per quod, "actionable only upon allegation and proof of special damage or harm." *Gibson*, 221 N.E.2d at 843. Counts 1 and 2 of Sheets's Third Amended Complaint were each captioned "Defamation Per Se" but Sheets maintains that he alleged special damages – his loss of employment – and he notes that the complaint once uses the term "defamation" without the subsequent phrase "per se." Sheets's attorney advised the trial court that the claim was one of defamation per se, yet Sheets asserts that he should not be bound by his attorney's representation. In the absence of fraud, a client is bound by his or her attorney's representations. *Lystarczyk v. Smits*, 435 N.E.2d 1011, 1014 n.5 (Ind. Ct. App. 1982). "The reliability of lawyers' representations is an integral component of the fair and efficient administration of justice." *Binder v. Benchwarmers Sports Lounge*, 833 N.E.2d 70, 75 (Ind. Ct. App. 2005). Accordingly, Sheets may not simply disregard the representations made to the trial court.

profession, office, or occupation, or (4) sexual misconduct." *Dugan*, 929 N.E.2d at 186. In contrast, if words are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence, they are considered defamatory per quod. *Id.* Damages are presumed in an action for defamation per se, but must be proven in an action for defamation per quod. *Id.*

[16] Birky communicated, via the Interra Compliance Line, that he perceived Sheets as being "more aggressive" since the disengagement of consulting services. (App. at 162.) Birky also opined that Sheets's cognitive ability had been impaired, as evidenced by a lack of focus on significant issues and repetition of the same questions many times. Birky also claimed to have received "feedback" as to Sheet's "not being fit for leadership" and being an "embarrassment." (App. at 162.) Although such statements cast aspersions upon Sheet's fitness to perform his professional duties – albeit in a forum designed for such communications – they provide a general assessment of unfitness, and do not allege misconduct. *See Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015) (recognizing that, if the speaker is merely expressing his subjective view, interpretation, or theory, the statement is not actionable defamation).

[17] Recent Indiana decisions clarify that defamation per se as to one's profession involves actual misconduct as opposed to a generalized opinion. In *Levee v. Beeching*, 729 N.E.2d 215 (Ind. Ct. App. 2000), a school principal sued a teacher's union and the union representation for defamation per se. The union

representative had called the principal a "liar" and stated that she "favored some staff." *Id.* at 218. A panel of this Court concluded that the words were not "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Id.* at 220. The Court also observed that the statements were not defamatory on their own, but were only defamatory with reference to the union representative's pattern of personal attacks against the principal. *Id.*

[18]  *Baker v. Tremco*, 917 N.E.2d 650 (Ind. 2009), involved a plaintiff who quit his former employment with the defendant after a workplace dispute. The plaintiff then started his own business and the former employer's representative commented that the plaintiff "had engaged in inappropriate sales practices." *Id.* at 657. Our Indiana Supreme Court found the statement to be "far too vague to conclude that [it was] so obviously and naturally harmful that proof of [its] injurious character c[ould] be dispensed with." *Id.* at 658. Accordingly, the statement was not defamatory per se. Although the phrase "inappropriate sales practice" was directed toward the plaintiff's "trade, profession, or occupation," it did not impute the requisite "misconduct." *Id.*

[19]  *Wartell v. Lee*, WL 7983987, ___ N.E.3d ___ (Ind. Ct. App. 2015), *trans. denied*, was an appeal following a grant of summary judgment on a claim of defamation per se. Lee had sent a letter to then-Purdue president Dr. France Cordova urging denial of Chancellor Michael Wartell's request for an exception to Purdue's retirement policy. The letter did not mention specific incidents of misconduct; rather, it included general statements about Wartell's character and

conduct in his role as chancellor that "were arguably defamatory." Slip op. at 6. However, the vague statements (including references to "his word not being his bond," a "lack of integrity," and "broken faith" as well as a prediction that support "will be hard to come by") did not rise to the level of defamation per se. Slip op. at 2. The Court explained:

> It is understandable and indeed tempting to leap from a determination that an allegedly defamatory statement is related to a person's trade, profession, office, or occupation to the conclusion that the statement is defamatory per se. However, that is simply not the proper legal analysis. As a matter of law, for an allegedly defamatory statement to qualify as defamation per se, it must impute not only the serious level of misconduct of the type described in *Dugan*, but also in a way that does not require reference to extrinsic facts for context.

Slip op. at 4.

[20] Birky's communication regarding Sheets did not impute occupational misconduct without resort to extrinsic evidence. The trial court properly concluded, as a matter of law, that Birky's statements did not constitute defamation per se. Accordingly, the trial court properly granted summary judgment on this claim to Birky and Interra.

## Jury Instruction – Tortious Interference

[21] Sheets contends that the trial court abused its discretion by rejecting his proffered jury instructions on intentional interference with an employment-at-will contract. We resolve an appellate claim of trial error in refusing a tendered

instruction by considering (1) whether the instruction is a correct statement of the law, (2) whether there is evidence of record to support the giving of the instruction, and (3) whether the substance of the instruction is covered by another instruction given by the trial court. *Raess v. Doescher*, 883 N.E.2d 790, 798 (Ind. 2008). When evaluating these factors, we are mindful that instructing the jury generally lies in the sole discretion of the trial court and reversal is appropriate only for an abuse of that discretion. *Id*. at 799.

[22] Indiana recognizes that intentional unjustified interference by third parties[6] with an employment contract is an actionable tort. *Drake v. Dickey*, 2 N.E.3d 30, 34 (Ind. Ct. App. 2013). Tortious interference with a contractual relationship consists of the following elements: (1) the existence of a valid and enforceable contract; (2) the defendants' knowledge of the existence of the contract; (3) the defendants' intentional inducement of breach of the contract; (4) the absence of justification; and (5) resultant damages. *Id.*

[23] On August 4, 2015, before the jury trial commenced, Sheets filed a proposed final jury instruction stating that his employment-at-will contract was protected from outside interference; he had the burden to prove five requisite elements; and two elements were undisputed. At the conclusion of trial, the litigants were instructed to file proposed instructions and the trial court conducted a lengthy

---

[6] Venture and Bechler now contend that, when they monitored the hotline and reported Birky's call, they acted as an agent of Interra, as opposed to a third party. Nonetheless, they do not suggest that they made this argument at trial, and it appears that both parties agreed that the jury would be instructed on intentional interference with an at-will employment contract.

conference on final instructions. Sheets tendered two proposed instructions, one of which was an abbreviated version of his earlier proffered instruction:[7]

> Jack Sheets was an employee at will of Interra Credit Union. Jack Sheets' employment at will relationship was a contract that the law protects from outside interference by third parties.

(App. at 873.)

[24] The instruction was not given. Rather, the trial court gave the jury the following two instructions on tortious interference with an employment contract:

> To recover damages for wrongful interference with contractual relations, Sheets must prove by the greater weight of the evidence that:
>
> (1) A valid and enforceable contract existed between Sheets and Interra Credit Union;
>
> (2) The Venture Defendants knew the contract existed;
>
> (3) The Venture Defendants intentionally caused a breach of the contract;
>
> (4) No justification existed for the Venture Defendants' conduct; and

---

[7] The second tendered instruction concerned the gratuitous assumption of a duty.

(5) Sheets was harmed as a result.

(App. at 909).

> Plaintiff was an employee at will of Interra Credit Union. Plaintiffs' employment was a relationship. An employment at will is an employment relationship that has no definite length of time. Except for a few limited circumstances, an employment-at-will relationship may be terminated by the employer or employee at anytime and for any reason or for no reason at all.

(App. at 912.) The trial court also instructed the jury that breach of an at will employment agreement does not mean only termination of employment, and that Venture would be liable if Bechler committed the alleged tort while acting within the scope of his agency.

[25] At the jury instruction conference, Sheets argued that "without giving my instruction … there's a real danger that the jury might think it was an employee at will relationship, therefore any – it could be terminated for any reason, including the interference of the Defendants." (Sept. 1, 2015 Tr. at 16.) He renews this argument on appeal: "Without the benefit of Sheets' tendered instructions, the jury likely understood that "any reason" for termination could include the Defendants' alleged interference." Appellant's Brief at 20. He further argues that jurors would understand a "contract" to be a written contract and thus "it was incumbent upon the trial court to instruct the jury that Sheets' employment at will was a contract that the law protects from outside interference." Appellant's Brief at 20.

[26] Sheets's understanding of protection of an at-will employment contract is overly broad. In *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282 (1991), our Indiana Supreme Court recognized that a plaintiff may bring a claim for tortious interference with an employment relationship although the contract is terminable at will. At the same time, however, the Court observed: "The plaintiff bringing such an action, however, must be prepared to show that the defendant interferer acted intentionally and without a legitimate business purpose." *Id.* at 285. Sheets's instruction to the effect that the law protects such a contract "from outside interference" is incomplete, in that it does not contemplate that the interference must be intentional or without a legitimate business purpose.

[27] Sheets did not demonstrate that the rejected instruction was a correct statement of the law, supported by evidence of record, and not covered by other instructions of the trial court. As such, he has demonstrated no abuse of discretion.

# Conclusion

[28] Summary judgment was properly granted on the defamation per se claim. The trial court did not abuse its discretion when it refused Sheets's incomplete instruction on the protection afforded by Indiana law to an at-will employment contract.

[29] Affirmed.

Bradford, J., and Altice, J., concur.