# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 11 2018, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

APPELLANT PRO SE

Mario L. Sims
South Bend, Indiana

---

IN THE
# COURT OF APPEALS OF INDIANA

---

Mario L. Sims,

*Appellant-Plaintiff,*

v.

Emily Taylor,

*Appellee-Defendant.*

May 11, 2018

Court of Appeals Case No.
71A03-1708-CT-2026

Appeal from the St. Joseph
Superior Court

The Honorable Jenny Pitts Manier,
Judge

Trial Court Cause No.
71D05-1609-CT-448

**Mathias, Judge.**

[1]     Mario L. Sims ("Sims") filed a complaint in St. Joseph Superior Court against Emily Taylor ("Taylor") alleging defamation *per se* for statements Taylor wrote on Facebook. The trial court granted summary judgment in favor of Taylor.

Sims now appeals and raises four issues for review which we restate as the following three issues:

> I. Whether the trial court erred when it granted Taylor's motion for summary judgment?
>
> II. Whether the trial court erred when it denied Sims's motion for change of judge?
>
> III. Whether the trial court erred when it awarded Taylor attorney fees?

We affirm the trial court in all respects except for the amount awarded in attorney fees. On that issue, we remand with instructions to the trial court to correct its order as discussed in this opinion.

## Facts and Procedural History[1]

On September 15, 2016, Taylor read a post in a private Facebook forum which stated that "Pastor Mario Sims of Duolos Chapel has given leaders of the Nu Black Power Movement of South Bend access to the entire church building in hopes to clean and renovate the building," and "[w]e are in need of sponsors and donations to help pay for the building renovations." Appellant's App. p. 99. Taylor responded with the following post of her own:

---

[1] The "Statement of Facts" section of Sims's brief presents the facts in a manner that emphasizes specific facts, credentials, and assertions irrelevant to the case before us. Mr. Sims has also been an active litigant at the trial and appellate levels for quite some time. We remind Sims of Indiana Appellate Rule 46(A)(6)(b), which states in pertinent part that "[t]he facts shall be stated in accordance with the standard of review appropriate to the judgment."

I'm going to be honest here . . . I think Mario Sims is far from a Christian as you can get and is the LAST person I would trust to lead a congregation. He is in this for fame and glory, the exact things the Bible warns people against. He is vindictive, cruel, and unwilling to listen to any viewpoint that might contradict the story he wants to peddle to the media. He is interested in stirring up trouble, but more than likely to disappear when the time comes to figure out how, as a community, we can make things work.

This is probably the wrong place to shill for him in other words.

***

[] it is a scam. I am inclined to believe he started his chapel for tax exempt status.

Appellant's App. p. 13.

[4]     On September 24, Sims was made aware of Taylor's comments on Facebook. Sims republished Taylor's comments in a public Facebook forum, and he also stated:

Emily Taylor, you have until 5:00 p.m., today to produce evidence that supports your post below, apologize, or I will file suit against you by Wednesday of next week without further notice. This is your only warning. Just because you phrase something as a statement of opinion -- "I think" or "I believe" -- does not automatically protect you from a defamation claim. These are false statements. Here is some free advice: If you are blogging or writing on your Facebook page, or submitting comments on someone else's blog or Facebook page, make sure that you have all of your facts absolutely straight before posting your statement to the internet. Once you have clicked "send," you can't take it back. In submitting posts or comments online or on social media, it is a good idea to exercise the utmost caution and avoid making any "gray area" statements that could be

construed as defamation. Emily Taylor, you have until 5:00 p.m., today to produce evidence that supports the post.

Appellant's App. pp. 13–14. Taylor did not retract her statements, nor did she issue Sims an apology.

[5] On September 30, Sims filed a complaint against Taylor alleging defamation *per se*. Taylor filed a motion to dismiss the complaint under Indiana's Anti-SLAPP[2] laws on March 24, 2017. Because the motion to dismiss was filed under the anti-SLAPP statute, the court was required to "[t]reat the motion as a motion for summary judgment." Ind. Code § 34-7-7-9(a)(1).

[6] The trial court held a hearing on the summary judgment motion on May 23. And on June 5, the trial court granted Taylor's motion. A week later, Taylor's counsel filed a motion for attorney fees in the amount of $4,375.50 with an accompanying affidavit. The next day, Sims filed: (1) a motion to correct error; (2) a petition for change of judge; and (3) an opposition to Taylor's counsel's motion for attorney fees. On July 5, the trial court issued its final order denying Sims's motion for change of judge, and the court awarded Taylor's counsel attorney fees in the amount of $4,735.50.

[7] Sims now appeals.

---

[2] SLAPP stands for "strategic lawsuits against public participation," which are described as "meritless suits aimed at silencing a plaintiff's opponents, or at least diverting their resources." *Nexus Group, Inc. v. Heritage Appraisal Serv.*, 942 N.E.2d 119, 122 (Ind. Ct. App. 2011) (citation omitted). Indiana adopted the anti-SLAPP statute in order to discourage such lawsuits from being brought. *Id.*

# Discussion and Decision

We initially note that Taylor did not file an appellee's brief. In such cases, we will not develop arguments for the appellee, and we apply a less stringent standard of review. *State v. Miracle*, 75 N.E.3d 1106, 1108 (Ind. Ct. App. 2017). "We may reverse if the appellant is able to establish *prima facie* error, which is error at first sight, on first appearance, or on the face of it." *Wharton v. State*, 42 N.E.3d 539, 541 (Ind. Ct. App. 2015). "The appellee's failure to provide argument does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required." *Id.*

## I. Summary Judgment Under the Anti-SLAPP Statute

Sims first argues that the trial court erred when it granted Taylor's motion for summary judgment. As stated above, Taylor's motion was filed as a motion to dismiss the complaint against her under Indiana's anti-SLAPP statute. And the anti-SLAPP statute requires the court to "[t]reat the motion as a motion for summary judgment." I.C. § 34-7-7-9(a)(1); *see also* Ind. Trial Rule 12(C) (converting to summary judgment a motion that includes facts outside the pleading). To the extent that Trial Rule 56—which governs summary judgment motions—conflicts with the anti-SLAPP statutes, Trial Rule 56 controls. *Nexus Group, Inc. v. Heritage Appraisal Serv.*, 942 N.E.2d 119, 122 (Ind. Ct. App. 2011).

We review a summary judgment *de novo*, applying the same standard as the trial court and drawing all reasonable inferences in favor of the nonmoving party. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). In conducting our review,

we consider only those matters that were designated at the summary judgment stage. *Haegert v. McMullan*, 953 N.E.2d 1223, 1229 (Ind. Ct. App. 2011). Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hughley*, 15 N.E.3d at 1003; T.R. 56(C). If there is any doubt as to the conclusion a jury could reach, then summary judgment is improper. *Nexus Group, Inc.*, 942 N.E.2d at 122.

[11] Our State's anti-SLAPP statute provides:

> It is a defense in a civil action against a person that the act or omission complained of is:
>
> (1)  an act or omission of that person in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue; and
>
> (2)  an act or omission taken in good faith and with a reasonable basis in law and fact.

Ind. Code § 34-7-7-5. The party seeking to dismiss a claim under the anti-SLAPP statute "must state with specificity the public issue or issue of public interest that prompted the act in furtherance of the person's right of petition or free speech[.]" I.C. § 34-7-7-9(b). And the trial court shall grant the motion "if the court finds that the person filing the motion has proven, by a preponderance of the evidence, that the act upon which the claim is based is a lawful act in furtherance of the person's right of petition or free speech[.]" *Id.* at (d). If a party

is successful in having a claim dismissed under the act, the defendant is entitled to reasonable attorney fees. Ind. Code § 34-7-7-7.

[12] The first question is whether or not Taylor sufficiently stated with specificity the public issue that prompted her Facebook comment. In Taylor's affidavit, she explained the important public issue as, "should donations be given to Pastor Mario Sims and the Doulos Chapel?" Appellant's App. p. 99.

[13] Our supreme court has explained that generally, "[s]peech is on a matter of public concern if it is addressed to 'any matter of political, social, or other concern to the community,' as determined by its content, form, and context." *Love v. Rehfus*, 946 N.E.2d 1, 9 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Our courts have not spoken "at length" regarding whether speech relates to a matter of public concern in the anti-SLAPP context, but we have noted with approval the analysis of California courts on that topic. *Brandom v. Coupled Products, LLC*, 975 N.E.2d 382, 386 (Ind. Ct. App. 2012) (citing *Cross v. Cooper*, 127 Cal. Rptr. 3d 903 (Cal. Ct. App. 2011)).

[14] We explained in *Brandom* that California courts have recognized three non-exclusive categories of statements that have been given anti-SLAPP protection: (1) "cases where the statement or activity precipitating the underlying cause of action was 'a person or entity in the public eye'"; (2) "cases where the statement or activity precipitating the underlying cause of action 'involved conduct that could affect large numbers of people beyond the direct participants'"; and (3) "cases where the statement or activity precipitating the claim involved 'a topic

of widespread, public interest.'" *Id.* at 387 (quoting *Cross*, 127 Cal. Rptr. 3d 903 at 914 (citations omitted)).

[15] Based on the facts and circumstances before us, Taylor's comments fall within the first *Cross* category, *i.e.*, where the underlying statement precipitating the cause of action was a person or entity in the public eye. In his complaint, Sims states that he "gained the highest public profile of any non-elected official" before becoming a pastor. Appellant's App. p. 15. He also notes that "[h]e currently has a weekly cable television Bible Study titled 'Duolos Chapel' that airs on public access channel 99." *Id.* at 18. Moreover, he founded Duolos Chapel in 2013 and "is currently seeking to expand the church capabilities to serve a growing number of needy individuals and has made a public appeal for assistance from the public, and grants." *Id.* Thus, Taylor's comments about Sims and whether or not people should donate to Duolos Chapel are, by Sims's own statements, an issue of public importance as both Sims and the church are in the public eye.[3]

[16] While Taylor's statements were made "in connection with a public issue," I.C. § 34-7-7-5, Taylor must also show that her statements did not amount to defamatory *per se* as a matter of law for summary judgment to be proper. Our

---

[3] Sims also notes in his reply to Taylor's motion for summary judgment, "As a result of the *public interest*, under Indiana defamation law, Pastor Sims was required to show that Emily Taylor acted with actual malice in publishing the statement." Appellant's App. p. 124 (emphasis added).

supreme court has explained what is required to establish a claim of defamation and defamation *per se*:

> To establish a claim of defamation, a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages. A statement is defamatory if it tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person. One type of defamation action, alleging defamation *per se*, arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct. In contrast, if the words used are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence, they are considered defamatory *per quod*.

*Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (internal citations and quotations omitted).

[17] Here, Sims only alleged defamation *per se*. Therefore, it is his burden to prove that the language of Taylor's statement constitutes an imputation of a criminal act or misconduct in his profession, as the other two categories are inapplicable. We have previously explained that "[f]or a statement to be actionable [as defamation *per se*], *it must be clear that it contains [an] objectively verifiable fact regarding the plaintiff*. If the speaker is merely expressing his subjective view, interpretation, or theory, then the statement is not actionable." *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015) (emphasis added) (citation omitted).

[18] Sims asserts that Taylor's comments "alleged criminal conduct and misconduct in [his] trade, profession, office, or occupation." Appellant's Br. at 20. He cites to our supreme court's decision in *Dugan* to support his claim. In that case, Dugan's supervisor made statements to other employees alleging, in part, that Dugan was: (1) stealing time from the company; and (2) working on a scheme with her boss in an attempt to defraud the company. *Dugan*, 929 N.E.2d 184 at 186. The *Dugan* court held that these comments qualified for consideration as defamation *per se* because they were clearly "statements imputing criminal conduct or occupational misconduct." *Id.* at 187. Sims argues that like the supervisor in *Dugan*, here Taylor "made similar statements imputing criminal conduct or occupational misconduct in [p]astoring." Appellant's Br. at 20. We disagree.

[19] In *Wartell v. Lee*, 47 N.E.3d 381, 387 (Ind. Ct. App. 2015), *trans. denied*, we noted that the comments noted above in *Dugan* "were not subjective opinion but rather were objectively verifiable and defamatory on their face." In *Wartell*, Lee expressed his concerns about Wartell, the Indiana Purdue University Fort Wayne chancellor at the time, in a letter to the president of Purdue University alleging that: (1) Wartell's word did not always serve as his bond; (2) Wartell had "broken faith" with certain people and in certain situations; (3) Wartell lacked integrity; (4) Wartell's character was frequently at issue in the community; (5) it would be hard to raise funds for the university if Wartell remained president; and (6) the university deserved a chancellor with "impeccable integrity" and the willingness to cooperate with others. *Id.* at 383–

84. On appeal, we found that although Lee's comments "were arguably defamatory, the vagueness with which they are stated prevents them from imputing misconduct and rising to the level of defamation *per se*." *Id.* at 387. We also explained that "Lee's statements require development of the underlying factual context in the legal determination of whether they were defamatory, and as such, the statements are not actionable as defamation *per se*." *Id.* at 387–88.

[20]　Taylor's comments here, while unflattering, do not allege criminal activity or any *specific* actual misconduct on the part of Sims that could be understood or uncovered without reference to extrinsic facts for context. Taylor made general opinionated statements about Sims's character and his motives in raising money for his church. *See Baker v. Tremco Inc.*, 917 N.E.2d 650, 658 (Ind. 2009) (alleging that a former employer took part in inappropriate sales practices did not impute the requisite misconduct for defamation *per se*); *Hamilton v. Prewett*, 860 N.E.2d 1234, 1243 (Ind. Ct. App. 2007) (holding that a false statement of fact is required to impose liability for defamation), *trans. denied*; *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. Ct. App. 2000) (calling a principal a liar and asserting that she favored some staff were not defamatory *per se*). Although Taylor's comments had a defamatory imputation, her words were not "so obviously and naturally harmful that proof of their injurious character can be dispensed with," *Moore v. University of Notre Dame*, 968 F. Supp. 1330, 1334 (N.D. Ind. 1997) (quotation and citation omitted), and thus they were not defamatory *per se*.

[21] For all of these reasons we conclude that Taylor's comments were related to an issue of public importance and that no genuine issues of material fact exist as to whether her statements were defamatory *per se*. Accordingly, the trial court did not err in granting Taylor's motion for summary judgment.[4]

## II. Denial of the Motion for Change of Judge

[22] Sims next argues that the trial court erred when it denied his motion for change of judge after the trial court had issued its order. We review the trial court's denial of Sims's motion for an abuse of discretion. *Carter v. Knox Cnty. Office of Family & Children*, 761 N.E.2d 431, 434 (Ind. Ct. App. 2001); *see also* Ind. Trial Rule 76 (C)(6). It is an abuse of discretion if the trial court's ruling "is against the logic and effect of the facts and circumstances before it." *In re Guardianship of Hickman*, 805 N.E.2d 808, 814 (Ind. Ct. App. 2004), *trans. denied*. Regarding a trial court's denial of a motion for a change of venue from judge, we will find an abuse of discretion only where the "record discloses actual bias and prejudice against a party." *Carter*, 761 N.E.2d at 434. "In ruling on a motion for change of judge, the trial court must determine whether the facts alleged . . . support a rational inference of bias or prejudice." *Morris v. Bank One, Ind.*, *N.A.*, 789 N.E.2d 68, 73 (Ind. Ct. App. 2003), *trans. denied*. And reversal is only

---

[4] Sims also alleges that the trial court abused its discretion by not granting his motion to correct errors for the same reasons he provided as to why the trial court erred in granting Taylor's motion for summary judgment. *See* Appellant's Br. at 20–21. Because we find the trial court did not err when it granted Taylor's motion for summary judgment, we also find that the trial court did not abuse its discretion when it implicitly denied his motion to correct errors.

appropriate where the record discloses actual bias and prejudice against the party. *Carter*, 761 N.E.2d at 434.

[23] Sims's entire argument that Judge Manier showed bias or prejudice is centered on the alleged beliefs of her husband, Edward Manier, a Notre Dame Professor. *See* Appellant's Br. at 24–28. He contends that Judge Manier should have disclosed her husband's alleged outspoken beliefs pertaining to the legal defense Sims presented. *Id.* at 28. But it is unclear what "legal defense" Sims is referring to. Each example of alleged bias he imputes on Mr. Manier concerns his purported views on issues of abortion. And the bias or prejudice necessary for a change of judge "exists only where there is an undisputed claim or the judge has expressed an opinion on the merits of the controversy before [her]." *Carter*, 761 N.E.2d at 435. Moreover, prejudice must be shown by the judge's conduct during a hearing, not from her subjective views. *Id.* Sims's claims relate to Judge Manier's husband's subjective views, and not to any bias or prejudice during the proceeding.[5] Accordingly, the trial court did not abuse its discretion when it denied Sims's motion for change of judge.

---

[5] Sims asserts that Judge Manier violated both "Indiana Judicial Conduct Canons 2(A) and 3(E)(1)." Appellant's Br. at 29. However, the proper citation for 3(E)(1) based on the language Sims uses in his brief appears to be to Indiana Judicial Conduct Rule 2.11(A) which states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to . . . [where] [t]he judge has a personal bias or prejudice concerning a party or a party's lawyer[.]" And for 2(A), it appears the proper citation would be to Indiana Judicial Conduct Rule 2.2 and its accompanying comments which call for judicial impartiality and fairness to all parties involved. But Sims provides no evidence to explain how Judge Manier violated either of these rules, nor do we find even a scintilla of judicial bias or prejudice in our review of the record.

### III. Attorney Fees

[24] Finally, Sims contends that the trial court abused its discretion when it awarded $4,735.50 in attorney fees to Taylor's counsel. We initially note that based on Taylor's counsel's affidavit requesting $4,375.50 in attorney fees, and the trial court's order stating that the amount is "reasonable both in terms of the hourly rate assessed and the time expended by [Taylor's] counsel," a scrivener's error was made transposing the seven and the three. Thus, the proper amount of attorney fees here is the requested $4,375.50, and on remand the trial court should amend its order accordingly

[25] However, Sims also argues that Taylor's counsel provided inadequate documentation regarding the amount of attorney fees. Appellant's Br. at 22–23. On appeal, we review the trial court's decision in determining a reasonable amount of attorney fees for an abuse of discretion. *Kitchell v. Franklin*, 26 N.E.3d 1050, 1056 (Ind. Ct. App. 2015), *trans. denied*. A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances before it or if the trial court has misinterpreted the law. *Id.*

[26] Under Indiana Code section 34-7-7-7, "[a] prevailing defendant on a motion to dismiss made under [the anti-SLAPP statute] is entitled to recover reasonable attorney's fees and costs." Here, Taylor's counsel submitted an affidavit which explained that he "spent 24.9 hours in the defense of [Taylor]," listed what his time was spent on, provided a reasonable hourly rate, and included a calculation of the total amount owed.

Sims cites to our supreme court's decision in *Galanis v. Lyons & Truitt*, 715 N.E.2d 858 (Ind. 1999) to support his position that Taylor's counsel did not exercise proper judgement in documenting his requested fees. However, *Galanis* involved a contingent fee, a discharged lawyer, and an order in which it was unclear what the trial court meant when it held one of the attorneys was entitled to a reasonable fee. *Id.* at 860–64. None of these issues are before us here. Taylor's counsel provided the hours he worked, what he worked on, a reasonable fee, and he multiplied the two to reach the amount he was owed. The trial court did not abuse its discretion when it awarded Taylor's counsel attorney fees. However, it did err when it awarded $4,735.50 instead of $4,375.50, and this needs to be corrected on remand.

## Conclusion

Based on the facts and circumstances before us, the trial court did not err when it granted summary judgment in favor of Taylor, it did not abuse its discretion when it denied Sims's motion for a change of judge, and it did not abuse its discretion when it awarded Taylor's counsel attorney fees. However, the trial court did err in the amount it awarded Taylor's counsel. Thus, we remand solely for the trial court to amend its order to reflect the proper amount of attorney fees awarded to Taylor's counsel as $4,375.50. In all other respects, we affirm.

Riley, J., and May, J., concur.